Erin Ronstadt (SBN 028362)
Jeremy Pekas (SBN 025678)
CALDWELL & OBER, P.L.L.C.
1940 East Camelback Road, Ste. 150
Phoenix, AZ 85016
(602) 277-1745
(602) 761-4443 Fax
erin@caldwellober.com
jeremy@caldwellober.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dyel O. Talbot, a married woman; | No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| Reliance Standard Life Insurance Company; | |
| Defendant. | |

For her claims against Defendant Reliance Standard Life Insurance Company ("Reliance" or "RSL"), Plaintiff Dyel O. Talbot ("Talbot") alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.      This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. ("ERISA").

2.      Talbot received benefits under the Group Long Term Disability Insurance Program, Group Policy Number LTD 108117 (the "Plan.").

3.      The Plan is a purported ERISA benefit plan established by non-party Paymentech Management Resources, Inc. ("Paymentech") for the benefit of its employees, including Talbot. The Plan is a welfare benefit plan that offered group long-term disability ("LTD") benefits.

4.      At all relevant times, Talbot was a participant and beneficiary of the Plan as an employee of non-party Paymentech.

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Road, Ste. 150
Phoenix, AZ 85016
(602) 277-1745

5.      Talbot had been a participant in the Plan, after expiration of the waiting period, since commencement of her employment as a Relationship Manager with non-party Paymentech on August 21, 2006.

6.      The Plan named Paymentech as the Policyholder, Plan Administrator, Plan Sponsor and Employer.

7.      At all relevant times, RSL administered claims under the Plan, acted on behalf of the Plan and acted as an agent for Paymentech.

8.      Paymentech funded LTD benefits through the purchase of the Plan with premiums. RSL fully insured the Plan.

9.      RSL assumed liability for claims arising under the Plan, including Talbot's claim.

10.     To the extent that non-party Matrix Absence Management, Inc. ("Matrix") administered claims under the Plan, RSL maintained complete control and involvement over Matrix and the claims process. RSL made the final decisions over claims handling issues and benefit determinations.

11.     There is no language in the Plan conferring discretion upon Matrix or upon any other entity that is not RSL.

12.     Talbot began receiving LTD benefits under the Plan effective December 31, 2007.

13.     In 2008, Paymentech terminated the Plan, and Talbot continued receiving benefits from RSL after the Plan termination.

14.     In correspondence dated October 22, 2013, Paymentech stated: "Ms. Talbot began receiving long term disability benefits under the plan in 2007, and that she continued receiving benefits from [RSL] after the plan was terminated in 2008. The Paymentech plan was fully insured by [RSL]."

15.     Paymentech had no involvement in the Plan's administration after the 2008 termination.

16.     RSL continued administering benefits under the Plan after Paymentech terminated the Plan.

17.     Talbot continued to receive benefits under the Plan until May 3, 2013 when RSL improperly terminated her benefits beyond April 26, 2013.

18.     Talbot is a citizen and resident of Maricopa County, Arizona. Talbot was a resident of Maricopa County, Arizona at all relevant times.

19.     RSL, a large corporation, has its principal place of business in the State of Illinois.

20.     RSL is licensed and authorized to do business in Maricopa County, Arizona, and resides and is found within Maricopa County pursuant to the meaning of the jurisdiction and venue provisions of ERISA, 29 U.S.C. § 1132 and 28 U.S.C. § 1391.

21.     This Court has jurisdiction over the subject matter of this action under ERISA, 29 U.S.C. §§ 1132(a), 1132(e)(1), and 28 U.S.C. §§ 2201-02 (declaratory judgments).

22.     Venue is proper in this Court under ERISA, 29 § 1132(e)(1) and 28 U.S.C. § 1391(b).

23.     RSL exercised authority to make final decisions regarding the payment of disability benefits for the Plan, and the Plan states that RSL is a "fiduciary." Accordingly, Talbot is informed and believes that RSL is either a "named fiduciary" of the Plan, pursuant to 29 USC § 1133(2); and/or a "deemed fiduciary" pursuant to 29 USC § 1002 (21)(A); and/or a "designated fiduciary," pursuant to 29 USC § 1105(c)(1)(B).

24.     RSL does not have the proper discretionary authority to interpret the Plan or make eligibility determinations regarding the Plan.

25.     Talbot is entitled to *de novo* review of her claims.

## GENERAL ALLEGATIONS

26.     All previous paragraphs are incorporated by reference.

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Road, Ste. 150
Phoenix, AZ  85016
(602) 277-1745

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Road, Ste. 150
Phoenix, AZ 85016
(602) 277-1745

27.    Under the terms of the Plan, RSL promises and becomes obligated to pay covered LTD insurance benefits when Talbot becomes "Totally Disabled."

28.    Talbot was an employee eligible for LTD benefits under Class 2 of the Plan, because she was an "active, Full-time Employee[] of Paymentech earning less than $75,000."

29.    Under the Plan, a claimant is "Totally Disabled" if "as a result of an Injury or Sickness: (1) during the Elimination Period and for the first 24 months for which a Monthly Benefit is payable, [he or she] cannot perform the material duties of [his or her] regular occupation;" and "(2) after a Monthly Benefit has been paid for 24 months, [he or she] cannot perform the material duties of any occupation."

30.    The Plan does not define "regular occupation."

31.    Under the Plan, "[a]ny occupation is one that your education, training or experience will *reasonably* allow. [RSL will] consider [a claimant] Totally Disabled if due to an Injury or Sickness [he or she is] capable of *only performing the material duties on a part-time basis or part of the material duties on a Full-time basis*." (emphasis added).

32.    "'Full-time' means working for the Policyholder for a minimum of 30 hours during [a claimant's] regular work week."

33.    The Plan paid a Monthly Benefit "equal to 60% of Covered Monthly Earnings," which includes commissions received from the Policyholder.

34.    Talbot's last day worked was September 30, 2007 and, as of that date, her annual salary with commissions was $41,684.50.

35.    Talbot was eligible to receive benefits until her Social Security Normal Retirement Age, age 67, under the Plan.

36.    Talbot developed permanent, medically necessary restrictions and limitations that constitute Total Disability from September 30, 2007 moving forward.

-4-

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Road, Ste. 150
Phoenix, AZ 85016
(602) 277-1745

37.     Talbot received STD benefits and was approved for LTD benefits on February 4, 2008, with an effective date of December 31, 2007, after a 90-day Elimination Period.

38.     Among her disabling conditions, Talbot suffers from degenerative disc disease ("DDD"), discogenic spondyloslisthesis, lumbar spinal stenosis, osteoarthritis, fibromyalgia, and headaches. She experiences chronic pain from her disabling conditions that require treatment and that collectively constitute Total Disability under the Plan.

39.     On May 6, 2008, Matrix secured a Nurse Case Manager ("NCM") review, which concluded that Talbot's MRI findings may have explained her current symptoms of back pain but would not preclude her from performing the light duties of her regular occupation.

40.     In a letter dated June 28, 2008, RSL denied Talbot's benefits (the "First Denial") based on the NCM review from the month before, finding that Talbot did have spondylolisthesis, but that "the severity would not preclude her from [her regular occupation and] [t]herefore, there is a lack of significant objective medical evidence to support" continued benefits.

41.     On July 2, 2008, Talbot requested in writing her claim file and Plan documents from Matrix.

42.     On October 23, 2008, Matrix received Talbot's appeal of the First Denial.

43.     On October 30, 2008, Matrix reinstated Talbot's LTD benefits. In finding Talbot Totally Disabled and reinstating her benefits, RSL relied in part on an MRI that documented "DDD," "lumbar radiculitis, lumbar spinal stenosis," and a "disc protrusion at L4-5, L5-S1." RSL noted that the medical records supported Talbot's restrictions and limitations as "less than sedentary" and that the duration of her conditions "may be prolonged based on severity of pain and failure of conservative measures at this point."

44.     On January 6, 2009, Talbot applied for SSDI benefits.

45.     On April 29, 2009, another NCM reviewed Talbot's claim file after collecting updated medical records from her treating providers. The NCM opined that her records

supported a sedentary level of capacity, but noted that her symptoms required continued medication adjustments and treatment, and that her providers had not yet established a final definitive diagnosis. The claim direction was to allow additional time for treatment and to follow up with an additional review at the time of the change in definition to "Any Occupation" on December 31, 2009.

46.     In November 2009, Matrix determined through another NCM that Talbot's medical records supported restrictions and limitations consistent with a sedentary capacity.

47.     In a letter dated January 11, 2010, Matrix notified Talbot that they were evaluating her eligibility for benefits according to the "Any Occupation" period under the Plan.

48.     In a letter dated February 18, 2010, Matrix denied Talbot's LTD benefits for a second time (the "Second Denial"). According to Matrix, the November 13, 2009 NCM review supported that Talbot was restricted to sedentary occupation functional level work capacity, but has capacity and ability to perform alternative occupations. Matrix also stated that her treating providers had yet to establish a definitive diagnosis. Therefore, she did not satisfy the definition of "Total Disability" beyond January 26, 2010.

49.     After requesting her claim file and plan documents again, Talbot appealed in a letter dated March 9, 2010.

50.     On or about March 26, 2010, Matrix had the appeal and file reviewed by a NCM, who was unable to reverse previous determination. Matrix then referred to RSL's Appeals Unit for a formal review.

51.     On April 27, 2010, RSL notified Talbot that it would require an Independent Medical Examination ("IME") prior to conclusion of its review and sent Talbot to an IME on May 4, 2010 with Dr. Sherman (the "First IME").

52.   On June 10, 2010, RSL also had a Functional Capacity Evaluation ("FCE") done.

53.   In an email dated July 19, 2010, RSL notified Talbot that her LTD benefits would be reinstated on appeal. RSL did not explain the reasons for reinstating benefits and did not provide its analysis as part of its claim file disclosure.

54.   On or about February 22, 2011, Matrix completed another NCM review, which concluded that "less than sedentary restrictions and limitations" were "supported ongoing through [February 1, 2012]."

55.   RSL closely monitored Talbot's SSDI claim, requesting a status update by April 11, 2011 before estimating the SSDI offset absent Talbot's submitted proof of status.

56.   On July 10, 2011, Talbot was awarded Social Security Disability income ("SSDI") benefits retroactive to October 2, 2007 as a result of her medical conditions.

57.   In September 2011, RSL received Talbot's SSDI award information. RSL demanded a refund of LTD benefits from Talbot. Talbot complied with this demand and paid to RSL an amount in excess of $40,000.

58.   On December 27, 2011, RSL had a conversation with MetLife, who informed RSL that it was conducting Special Investigations Unit ("SIU") services on a frequent basis and asked if RSL wanted to conduct SIU with MetLife. RSL declined the joint efforts.

59.   On December 27, 2011, RSL acknowledged that, based on Talbot's medical evidence and recent SSDI award, her claim would be reviewed on an annual basis.

60.   In January 27, 2012, RSL began reviewing Talbot's claim for continued eligibility under the Plan.

61.   On March 5, 2012, RSL secured another NCM, which opined that Talbot's records supported a sedentary level of function with brief periods of standing and walking due to self-reported chronic low back pain and fibromyalgia. The NCM based

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Road, Ste. 150
Phoenix, AZ 85016
(602) 277-1745

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Road, Ste. 150
Phoenix, AZ  85016
(602) 277-1745

her findings on the First IME and FCE, which had been previously considered by RSL, and RSL found that Talbot was unable to work in Any Occupation after reviewing the First IME and FCE.

62. RSL decided to send Talbot for another IME and also to begin "SUI" investigative efforts based on Talbot's purported "exaggerated efforts" in the FCE.

63. As a result of its SUI efforts, RSL received a May 17, 2012 "Investigative Report" prepared by G4S Compliance & Investigations, a June 7, 2012 "Social Spy Monitoring" Report from Apex Investigations, and a June 2012 surveillance conducted by Apex Investigations.

64. On June 7, 2012, Talbot sent an email to Matrix asking for specific information about the IME physician.

65. Talbot was inadvertently copied on a June 8, 2012 email from RSL to Matrix (the "Internal Email"), which revealed that RSL completely guided Matrix in its claims handling, was familiar with Talbot's prior appeal(s), and would "appropriately push back" on Talbot's requests for information.

66. Among other statements, the Internal Email stated that RSL utilized IME doctors who are board certified "with an active practice."

67. On June 14, 2012, Talbot attended an IME with Dr. Howard (the "Second IME").

68. MES Solutions arranged the Second IME as RSL's vendor.

69. The Second IME was completed on July 6, 2012.

70. On July 12, 2012, based entirely on the Second IME, RSL recommended "immediate denial of the claim at this time."

71. Based entirely on the Second IME, without considering any other medical records or information, RSL conducted a Residual Employability Assessment (the "REA") to identify positions that Talbot could perform.

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Road, Ste. 150
Phoenix, AZ 85016
(602) 277-1745

72.     Matrix received the Second IME, and the claims manager responded to an email from Talbot on July 18, 2012 that he would be recommending the denial of her LTD benefits. On this same date, Talbot requested a copy of the Second IME and asked whether, before denial, she would have the opportunity to respond to the IME.

73.     RSL refused to allow Talbot to respond to the IME before denying her benefits in a letter dated August 28, 2012 (the "Third Denial"). The Third Denial was based entirely on the Second IME and the REA.

74.     Conveniently, there are no internal notes from July 30, 2012 to August 28, 2012, and the internal notes that were provided are suspiciously sparse over the entire life of the claim.

75.     RSL did not include the Internal Email as part of its internal notes, although the Internal Email is entirely relevant to Talbot's claim.

76.     Talbot appealed on or about September 21, 2012 directly to RSL, providing additional medical evidence in support of her disabling conditions, including a Medical Source Statement completed by Dr. Suber.

77.     RSL had until November 5, 2012 to make a decision regarding Talbot's appeal.

78.     On October 31, 2012, after inquiring about the status of her appeal, RSL responded to Talbot that it was sending her to yet another IME.

79.     Talbot argued that requiring her to attend two IMEs in a four-month period was unreasonable, and she asked to provide feedback regarding the chosen examiner, proposing that her treating providers help RSL pick a qualified examiner. RSL refused.

80.     On November 12, 2012, Talbot asked why she had not received notice of RSL's need for an extension of time to make a determination.

81.     In a letter dated November 13, 2012, RSL notified Talbot that she would be required to attend an IME on December 6, 2012 with Dr. Rowse (the "Third IME"), a specialist in Occupational and Environmental Medicine.

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Road, Ste. 150
Phoenix, AZ 85016
(602) 277-1745

82.     RSL also notified Talbot that it would require another 45 days for making a determination without reasonably explaining why the Third IME was necessary.

83.     MES Solutions arranged the Third IME as RSL's vendor.

84.     Talbot responded to the Third IME on February 15, 2013 after RSL disclosed it on January 17, 2013.

85.     On May 3, 2013, RSL upheld its Third Denial (the "Final Denial"), notifying Talbot that she had exhausted her administrative remedies and could bring a lawsuit.

86.     RSL paid Talbot's benefits for over five (5) years, and about three (3) of those 5 years were during the "Any Occupation" period under the Plan.

87.     Talbot's medical conditions never improved and in fact worsened since December 31, 2007.

88.     Talbot is Totally Disabled from her regular occupation, as well as Any Occupation for which she is reasonably fitted by training education and experience.

89.     Talbot continues to be Totally Disabled as defined by the Plan for LTD benefits eligibility.

90.     As of the date of this Complaint, Talbot is thirty-four (34) years old and should be entitled to LTD benefits until at least July 22, 2046.

91.     As of the date of this Complaint, Talbot continues to receive SSDI benefits for herself and her two children.

92.     Talbot has exhausted her administrative remedies under the Plan.  Talbot satisfied all of the jurisdictional prerequisites to filing a claim in state court, and her claim is timely before this Court.

93.     Talbot's claims are subject to *de novo* review.

### COUNT I
### (Recovery of Plan Benefits)

94.     All previous paragraphs are incorporated by reference.

95.     The Plan is an Employee Welfare Benefit Plan as defined in ERISA, 29 U.S.C. § 1002.

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Road, Ste. 150
Phoenix, AZ 85016
(602) 277-1745

96.     Since Paymentech terminated the Plan in 2008, Defendant RSL has been and remains the Plan Sponsor, Plan Administrator and Plan fiduciary under ERISA.

97.     The Plan represents LTD coverage and a promise to provide LTD benefits until Talbot is no longer disabled under the terms of the Plan.

98.     Talbot became disabled in 2007, and continues to be disabled. She is unable to perform the material duties of her regular occupation or any occupation under the terms of the Plan.  She has claimed the benefits under the Plan to which she is entitled.

99.     Talbot reasonably expected that her conditions met the requirements of Total Disability as defined by the Plan for LTD benefits, and that she would receive benefits under the Plan until age 67 or until she was no longer disabled.

100.    RSL has improperly denied LTD benefits to Talbot in breach of the Plan. This breach was arbitrary, capricious, an abuse of discretion, imprudent, not supported by substantial evidence, and was clearly erroneous.

101.    RSL's determination that Talbot was not entitled to benefits was influenced by an improper conflict of interest.

102.    RSL unreasonably used IME doctors who were without appropriate knowledge, training, and experience to assess Talbot's disabling conditions.

103.    MES Solutions is a biased company who frequently provides insurance companies with IME reviews that are favorable for the denial of claims.

104.    RSL knew or should have known that MES Solutions is a biased company.

105.    Upon information and belief, as a company-wide practice, RSL uses MES Solutions, because it knows that MES Solutions provides reviews that are favorable to the denial of claims.

106.    RSL used MES Solutions in Talbot's claim, because it knew that the IMEs would be unfavorable for the continuation of Talbot's benefits.

107.    RSL unreasonably failed to ensure that MES Solutions provided unbiased and/or qualified IME doctors for purposes of its claims administration.

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Road, Ste. 150
Phoenix, AZ 85016
(602) 277-1745

108.    In its Final Denial, RSL asserted that it sent Talbot to the IME with Dr. Rowse "[i]n order to assess [her] alleged complaints afresh."

109.    However, RSL provided Dr. Rowse with the previous IMEs, thereby destroying any objectivity or "fresh" perspective that Dr. Rowse could possibly possess when examining Talbot's medical records.

110.    RSL did not provide Dr. Rowse or the other IME doctors used in Talbot's claim with all of the relevant medical records.

111.    Dr. Rowse opined outside of her area of expertise with regard to Talbot's conditions, including but not limited to Talbot's degenerative disc disease, osteoarthritis, and Fibromyalgia.

112.    Dr. Rowse had no reasonable basis for her recommended restrictions and limitations.

113.    Dr. Rowse demonstrated her extreme bias by making inappropriate and malicious comments about Talbot in the IME report.

114.    As one example of Dr. Rowse's malicious and adversarial approach to the IME with Talbot, Dr. Rowse stated the following in response to Talbot's requests for mobility assistance:

> Although Ms. Talbot's [requests for help] are minor examples, they suggest that Ms. Talbot is used to commanding those in her sphere to do her bidding. Perhaps her apparent 'dependence' on her mother and husband is really manipulation and exploitation, using them to meet her ends and revealing an intricate web of codependency. Ms. Talbot's regressions to a child-like state with no responsibilities and 'permission' to do whatever she wants, whenever she wants is the ultimate avoidance of adult responsibilities appropriate to her age and situations: wife, mother, household manager, worker/employee.

115.    In its Final Denial, RSL quoted verbatim Dr. Rowse's baseless and improper comments, including the comment provided above.

116.    Dr. Rowse relied on references that were outdated and, without reasonable justification, failed to provide any relevance for her references to her IME of Talbot.

117.    Upon information and belief, Drs. Sherman, Howard, and Rowse have been retained by RSL on numerous occasions to conduct records reviews or IMEs.

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Road, Ste. 150
Phoenix, AZ 85016
(602) 277-1745

118.    Upon information and belief, Drs. Sherman and Howard are biased for insurance companies and acted with bias in conducting their respective IMEs.

119.    Dr. Rowse has a history of bias against claimants, both in the LTD and SSDI arenas, which impacted the objectivity and reliability of the Third IME.

120.    Upon information and belief, Dr. Rowse does not have an active medical practice, which is contrary to RSL's stated internal policy for choosing IME doctors.

121.    RSL failed to explain why it credited the IMEs over Talbot's treating physicians and unreasonably relied on the plainly biased IME of Dr. Rowse.

122.    RSL failed to consider Talbot's medications on her ability to work.

123.    RSL relied on new reasons for denial that Talbot did not have the opportunity respond to and relied on reasons not disclosed to Talbot, including but not limited to Dr. Rowse's IME addendum(s), a May 17, 2012 "Investigative Report" prepared by G4S Compliance & Investigations, a June 7, 2012 "Social Spy Monitoring" Report, and a June 2012 surveillance conducted by Apex Investigations.

124.    RSL's surveillance of Talbot's claim consistently corroborated Talbot's pain complaints, but RSL ignored this evidence, because it was not favorable to a denial of Talbot's benefits.

125.    The surveillance that RSL conducted supports that Talbot did not engage in any activities in excess of her claimed abilities.

126.    RSL's own IME doctors documented objective findings that Talbot suffered from fibromyalgia and other disabling conditions, yet RSL ignored any objective findings without justification.

127.    None of RSL's reviewing physicians or NCMs ever set forth any substantive reasons why Talbot's doctors' opinions that she could not work full time in Any Occupation were incorrect.

128.    On information and belief, RSL used the same person(s) to administer Talbot's claim and various appeals, including but not limited to RSL employee Karen M.

129.   RSL unreasonably credited unreliable evidence over reliable evidence in its administration of Talbot's LTD claim, making its determination contrary to the clear weight of the medical opinion evidence in the record establishing Talbot's Total Disability.

130.   RSL acted as an adversary to Talbot, requesting evidence "in Anticipation of Litigation."

131.   In response to Talbot's counsel's June 24, 2013 request for all relevant documents under ERISA, RSL failed to provide almost everything counsel requested, including but not limited to updated internal notes.

132.   RSL handled Talbot's claim in an adversarial manner and failed to administer the Plan prudently and in Talbot's interests.

133.   In its Final Denial, RSL faulted Talbot for submitting voluminous appeals, improperly questioned the relevance of Talbot's comments that were merely responses to RSL's noted events, and peppered its denial with sarcastic and combative remarks.

134.   RSL failed to show that Talbot improved or that her conditions significantly changed in terminating her benefits. RSL has not identified and cannot identify any place in the record to show that Talbot's conditions improved after she was deemed Totally Disabled, or that she was not disabled in the first place.

135.   RSL actively secured evidence with the intent of denying Talbot's benefits.

136.   RSL did not meaningfully consider Talbot's SSDI benefits award, except when it acted in its own best interests to calculate and collect an overpayment in excess of $45,000.

137.   To the extent RSL addressed Talbot's SSDI award in its Final Denial, RSL demonstrated its adversarial approach to Talbot's claim and clear intent to deny her benefits.

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Road, Ste. 150
Phoenix, AZ 85016
(602) 277-1745

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Road, Ste. 150
Phoenix, AZ  85016
(602) 277-1745

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

138.   On multiple occasions throughout its administration of Talbot's claim, RSL failed to meaningfully communicate with Talbot or respond to Talbot's questions and concerns.

139.   RSL and its IME reviewers cherry-picked Talbot's medical records to create a selective and incomplete rendition of Talbot's medical history.

140.   RSL improperly failed to consider Talbot's subjective complaints, as well as the effect of her medications, in determining whether she was Totally Disabled under the Plan.

141.   In finding that Talbot could perform "Any Occupation," RSL found that Talbot could return to the equivalent of her regular occupation.

142.   However, RSL had previously found Talbot Totally Disabled from her regular occupation under the Plan.  RSL provided no explanation as to how Talbot could perform her regular occupation at the time of Final Denial but not before under the Plan.

143.   RSL did not consistently or properly apply the Plan terms, including but not limited to the Plan's definition of Total Disability. RSL completely ignored that Talbot only has to be unable to perform the material duties of Any Occupation on a part-time basis or be unable to perform part of the material duties of Any Occupation with Paymentech.

144.   RSL improperly inserted terms into the Plan that substantially altered the definition of Total Disability under which Talbot is entitled to benefits.

145.   RSL unreasonably relied on the First IME, FCE and REA's findings to deny Talbot's LTD benefits after using those same reports to find that Talbot could not work in Any Occupation under the Plan.

146.   RSL produced incomplete claims procedure guidelines and failed to indicate which procedures were relied upon in its termination of Talbot's LTD benefits.

147.   The Internal Email demonstrated that RSL has internal protocol, guidelines and communications not disclosed to Talbot.

148.   RSL intentionally and in bad faith withheld relevant information in violation of ERISA.

149.   RSL reached its determination without adequate justification for its conclusion that Talbot was no longer disabled from Any Occupation under the applicable terms of the Plan.

150.   Because of RSL's improper actions, Talbot was denied a full and fair review of her claim.

151.   RSL is not entitled to an arbitrary and capricious standard of review of their decision in this action.

152.   RSL's numerous procedural errors rise to the level of a "wholesale and flagrant" violation of ERISA, entitling Talbot to *de novo* review.

153.   Once the Plan terminated and RSL became the *de facto* Plan Administrator, RSL no longer had properly delegated discretionary authority.

154.   Moreover, Paymentech never properly conferred RSL with discretionary authority to administer claims under the Plan in the first place.

155.   RSL had significant financial conflicts of interest with respect to handling, monitoring, and eventually denying Talbot's disability benefits.

156.   RSL took no safeguards to insulate its decision-making process against its significant structural conflict of interest.

157.   RSL was not receiving premiums from Paymentech and therefore managed Talbot's claim with the sole intent to deny ongoing LTD benefits.

158.   RSL was unduly influenced by its financial conflict of interest, as *de facto* Plan Administrator, administrator of the Plan, and payer of benefits thereunder, when deciding to deny Talbot disability benefits.

159.   RSL's bad faith and structural conflict is evidenced in part by its many procedural irregularities and failure to provide timely and adequate disclosures. The

**CALDWELL & OBER, P.L.L.C.**
1940 E. Camelback Road, Ste. 150
Phoenix, AZ  85016
(602) 277-1745

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Road, Ste. 150
Phoenix, AZ 85016
(602) 277-1745

record supports that RSL placed its financial interests above Talbot's best interests in administering Talbot's LTD claim.

160.    On April 8, 2011, RSL prepared a report detailing its "Total Loss To Date" in paying Talbot's claim.

161.    On information and belief, RSL did not properly set aside loss reserves to pay Talbot's claim.

162.    RSL breached its fiduciary duties to Talbot by failing to provide benefits to which she is entitled under the terms of the Plan.

163.    RSL is equitably estopped from refusing to pay Talbot's continued benefits under the Plan.

164.    Talbot has exhausted her administrative remedies.

165.    Talbot's claims against RSL are timely under the Plan provisions and applicable law.

166.    Pursuant to the coverage provided in the Plan, to ERISA 29 U.S.C. § 1132(a)(1)(B), and to applicable federal and state common law, Talbot is entitled to recover all benefits due under the terms of the Plan, and to enforce her rights under the Plan.

167.    Talbot is entitled to seek any and all relief allowed pursuant to ERISA, including equitable remedies, in an effort to enforce her rights under the Plan.

168.    Talbot is entitled to reinstatement of any other employee benefits that were terminated, discontinued, or suspended as a result of the termination of her disability benefits. She is entitled to a restoration of the *status quo ante* before LTD benefits were wrongfully denied.

169.    Pursuant to 29 U.S.C. § 1132(g), Talbot is entitled to recover her attorneys' fees and costs incurred herein from RSL.

170.    Talbot is entitled to prejudgment interest on the benefits to which she is entitled and on her damages at the highest legal rate until paid.

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Road, Ste. 150
Phoenix, AZ 85016
(602) 277-1745

## COUNT II
### (Statutory Penalty)

171.   All previous paragraphs are incorporated by reference.

172.   RSL administered, investigated, and determined whether participants were entitled to LTD benefits under the Plan.

173.   Paymentech ceased any involvement in the Plan and was no longer the Plan Sponsor or Plan Administrator as of 2008.

174.   RSL assumed complete control of the Plan Administrator's functions and presented itself as the Plan Administrator.

175.   Because of Paymentech's termination of the Plan, RSL and Paymentech ceased being distinct and separate entities for purposes of Plan administration.

176.   To the extent the Plan still designates Paymentech as the Plan Administrator, Paymentech is the equivalent of a sham entity that no longer exists for purposes of the Plan.

177.   Given the Plan's termination, Paymentech cannot be considered the Plan Administrator for purposes of ERISA.

178.   RSL operates as a *de facto* Plan Administrator of the Plan in which Talbot is a participant.

179.   Upon information and belief, the policy of group disability insurance that funded the Plan contained a premium guarantee for a specified period before RSL's underwriting department conducted an experience rating analysis.

180.   As a result of the experience rating, RSL would - upon information and belief - adjust the premium charged for the group policy to maintain a predetermined earning ratio.

181.   RSL no longer receives premium payments for the group policy.

182.   Paymentech did not have to pay premiums for an insured while he/she was receiving monthly benefits under the Plan.

-18-

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Road, Ste. 150
Phoenix, AZ 85016
(602) 277-1745

183.    RSL has not produced any formal Plan amendment authorizing any changes to the terms of the Plan.

184.    Pursuant to 29 U.S.C. §1132(c)(1)(B), "any administrator who fails to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . may in the court's discretion be personally liable to such participant or beneficiary."

185.    Under 29 U.S.C. §1024(b)(4), "[t]he administrator shall, upon written request of any participant or beneficiary furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."

186.    On July 2, 2008, February 16, 2010, and August 28, 2012, Talbot requested RSL to disclose her Plan documents pursuant to ERISA and State law.

187.    Talbot's counsel made written requests for information on June 24, 2013 to RSL. Among the information requested, Talbot's counsel requested all relevant documents under ERISA, including but not limited to: "[c]orrespondence to/from Paymentech's legal counsel regarding administration of the Plan or Ms. Talbot's claim(s);" "[a]ll correspondence to/from Paymentech regarding Ms. Talbot's LTD benefits;" "[a]ll documents that demonstrate compliance with any administrative processes and safeguards designed to ensure and to verify that claim determinations are made in accordance with governing plan documents and that the plan provisions have been applied consistently with respect to similarly situated claimants;" "[a]ll plans, policies and/or guidelines used to guide Reliance and/or Matrix's representatives in evaluating claims;" "[a]ll policies and procedures which are designed to mitigate the structural conflict of interest in deciding which participants are eligible for benefits and the financial interest of Reliance as payor of those benefits; "[a]ll Surveillance tapes or data;" and "[u]nderwriting and premium decisions."

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Road, Ste. 150
Phoenix, AZ 85016
(602) 277-1745

188.   Talbot's written request to RSL contemplated the disclosure of Plan documents under ERISA.

189.   RSL failed to disclose the information requested by Talbot's counsel, including but not limited to the Plan documents and surveillance video.

190.   RSL never provided a proper disclosure of Plan documents to Talbot.

191.   Despite Talbot's request for an explanation if RSL failed to disclose any requested information, RSL did not in good faith explain why it believed the requested information was exempted from its disclosure obligations under ERISA.

192.   Moreover, Talbot made written requests to Paymentech on June 24, 2013, August 13, 2013, and October 10, 2013 seeking disclosure of Plan documents under ERISA.

193.   When Paymentech finally responded to Talbot's counsel in a letter dated October 22, 2013, Paymentech indicated for the first time that the Plan had been terminated as of 2008, and it indicated that it had discussed Talbot's Plan documents request with RSL.

194.   RSL knew or had reason to know that Talbot sent a written request for the disclosure of information under ERISA.

195.   Upon information and belief, Paymentech sent RSL a copy of Talbot's written requests for Plan documents.

196.   Had RSL provided the information Talbot requested, she could have learned of the Plan termination sooner.

197.   RSL knew it had fiduciary and other obligations under ERISA with respect to the Plan.

198.   RSL knew Paymentech terminated the Plan and also knew Paymentech was not involved with the Plan in any capacity after the termination in 2008.

199.   RSL acted in bad faith and with prejudice by failing to disclose relevant documents under ERISA in response to Talbot's written request.

200.   The undisclosed information is critical to Talbot's claim for benefits, and Talbot has been damaged by RSL's failure to disclose information under ERISA.

201.   RSL acted in bad faith and with prejudice by failing to respond to Talbot regarding her written disclosure requests to Paymentech.

202.   As the *de facto* Plan Administrator, RSL is liable for failing to disclose documents pursuant to 29 U.S.C. §1132, et. seq. since thirty (30) days from the date Talbot first provided RSL with a written request for Plan documents, which is approximately August 1, 2008.

203.   Under 29 U.S.C. § 1132(c)(1), the Court may impose a statutory penalty of up to $110 per day for the failure to provide requested documents.

204.   As of February 2, 2014, RSL owes Talbot approximately $221,320 in penalties, excluding interest, costs, and attorneys' fees.

205.   RSL continues to accrue penalties under ERISA until it properly discloses requested documents pursuant to ERISA.

## COUNT III
### (Breach of Fiduciary Duty)

206.   All previous paragraphs are incorporated by reference.

207.   RSL owes fiduciary duties to participants in the Plan under ERISA, 29 U.S.C. §§ 1132(a)(2), -(3).

208.   RSL admits that it is a fiduciary under the Plan with fiduciary duties, including the duty to act prudently and in the best interests of "Plan Participants and Beneficiaries."

209.   RSL exercised discretionary authority or control over the management or administration of the Plan.

210.   RSL's failure to provide all relevant information, its intentional withholding of relevant information, its numerous procedural irregularities, its financial conflict, and its failure to act in Talbot's best interests are all breaches of its fiduciary duty under ERISA and the terms of the Plan.

-21-

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Road, Ste. 150
Phoenix, AZ 85016
(602) 277-1745

211.    RSL failed to discharge its duties with the care, skill, prudence, and diligence that a prudent man acting in like capacity and familiar with such matters would use under similar circumstances.

212.    RSL acted with malice and in bad faith against Talbot, which constitutes a violation of its fiduciary duty.

213.    RSL arbitrarily and capriciously denied Talbot's benefits, which constitutes a breach of fiduciary duty.

214.    RSL failed to provide a summary of material modifications to the Plan as required under ERISA, which includes information related to Plan administration, Plan funding, and participants' legal rights.

215.    Talbot asked for Plan documents and other information relating to the Plan under ERISA.

216.    Talbot found out about the change in Plan administration over five (5) years after Paymentech terminated the Plan and therefore its Plan Administrator responsibilities.

217.    Talbot learned for the first time in October 2013, through her counsel, that the Plan was terminated in 2008.

218.    Talbot requested information from Paymentech, not knowing about the 2008 Plan termination.

219.    Upon information and belief, after the 2008 Plan termination, the Plan was procured by fraud, duress, or undue influence.

220.    RSL intentionally misled Talbot and other Plan participants regarding the 2008 Plan termination by Paymentech and its role as *de facto* Plan Administrator.

221.    ERISA "does not elsewhere adequately remedy" the injuries caused to Talbot by Defendant's breach of fiduciary duty violations.

222.    RSL should be held liable for benefits it gained through unjust enrichment and for harm caused as a result of its breach to Talbot.

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Road, Ste. 150
Phoenix, AZ  85016
(602) 277-1745

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Road, Ste. 150
Phoenix, AZ 85016
(602) 277-1745

223.    RSL must return any benefits resulting from its breach to Talbot.

224.    RSL's breaches injured the Plan, jeopardized the Plan or put at risk Plan assets.

225.    The Plan as a whole incurred an injury as a result of the RSL's breaches of its fiduciary duties.

226.    RSL is liable for loss of value to the Plan or for any profits that the Plan would have accrued in the absence of the breach.

227.    Talbot is entitled to pursue any equitable remedies that will put her in the position she would have attained but for RSL's breach of its duties under ERISA and the Plan.

228.    RSL gained a benefit by failing to provide Talbot with adequate disclosure under ERISA and the Plan.

229.    Because RSL breached its fiduciary duties, Talbot was actually harmed.

230.    Talbot relied on the Plan to her detriment, believing that she was entitled to LTD benefits pursuant to the provisions of the Plan.

231.    RSL was unjustly enriched as a result of its breach of fiduciary duty violations, because it wrongfully withheld benefits for its own profit.

232.    If Talbot is not awarded a remedy beyond an award of benefits, RSL has no incentive to stop denying benefits under the Plan as a result of its structural conflict of interests.

233.    Talbot seeks injunctive relief, which would benefit not only the Plan's individual participants, but also Talbot.

234.    As a direct and proximate result of the breaches of fiduciary duty, Talbot suffered actual financial harm and incurred financial expense.

WHEREFORE, Talbot prays for entry of judgment against Defendant as follows:

A.    For all past and future LTD benefits under the terms of the Plan;

B.    Enforcing Talbot's rights under the terms of the Plan;

C.      A declaration and enforcement of participants' rights under ERISA and the Plan;

D.      Clarifying and determining Talbot's rights to future benefits under the terms of the Plan;

E.      An injunction against the Plan from misinforming Plan participants of ERISA regulations and requiring compliance with ERISA regulations and Plan terms;

F.      An equitable surcharge, disgorgement, or other appropriate equitable remedy(ies) for RSL's breach of fiduciary duty violations and resulting unjust enrichment.

G.      A penalty under 29 U.S.C. § 1132(c)(1) in the amount of $110 per day for each day RSL has failed, and continues to fail, to provide Plan documents as *de facto* Plan Administrator;

H.      For equitable relief under 29 U.S.C. § 1132(a)(3);

I.      For an award of Talbot's attorneys' fees and costs incurred herein;

J.      For an award of prejudgment interest on benefits and damages at the highest legal rate until paid in full; and

K.      For such further relief as the Court deems just and reasonable.


Dated this 6th day of February 2014.

                        CALDWELL & OBER, P.C.


                        By:___s/ Erin Ronstadt_____
                              Erin Ronstadt
                              Attorney for Plaintiff

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Road, Ste. 150
Phoenix, AZ  85016
(602) 277-1745